IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BROTHERHOOD OF MAINTENANCE OF WAY
EMPLOYES DIVISION, IBT

    Plaintiff,

v.                                             No. CIV 06-245 JCH/LFG

BNSF RAILWAY COMPANY

    *and*

HON. RHONDA G. FAUGHT, in her capacity as
Secretary, New Mexico Department of Transportation,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff's *Motion to Alter or Amend the Judgment* [Doc. no. 83]. The Court held a hearing on this motion August 5, 2008. In its motion, Plaintiff raises four points: 1) the Court should allow Plaintiff to amend the complaint to add the Brotherhood of Railway Signalmen ("BRS") as a plaintiff; 2) the Court should vacate its order dismissing Secretary Faught as a defendant; 3) the Court erred in finding the dispute to be "minor" and dismissing the complaint for lack of Subject Matter Jurisdiction; and 4) if the Court does not change its ruling finding the dispute to be a "minor" one, it should grant Plaintiff's alternative request for a preliminary injunction. Having considered the motion, briefs, relevant law, supplemental declarations, and arguments of the parties at the hearing, and being otherwise fully informed, the Court finds that Plaintiff's motion to amend the complaint to add BRS as a plaintiff should be GRANTED, and all other relief sought in its motion should be DENIED.

**BACKGROUND**

This case presents a labor dispute over the right to perform railway maintenance work over certain railroad tracks in New Mexico. It arises from a series of agreements between the State of New Mexico ("the State") and BNSF Railway Company ("BNSF"). These include a series of Purchase and Sale Agreements ("PSAs"), each covering a segment of railroad track between Belen, New Mexico and Trinidad, Colorado, along with a Joint Use Agreement ("JUA") regarding the BNSF's and the State's respective rights to the tracks. In those agreements, BNSF consents to sell to the State approximately 280 miles of rail line from Belen to the New Mexico-Colorado border. Prior to the sale, BNSF provided rail freight common carriage over the subject rail line, and it intended to continue to do so after each transfer. Furthermore, after each transfer, BNSF retained "an exclusive easement for freight railroad purposes, including, but not limited to, the construction, maintenance, repair, replacement and operation of freight rail and associated facilities . . . ." *See Joint Stipulated Submission of Record* [Doc. 14], Tab 14 at ¶1.

The State submitted papers to the Surface Transportation Board ("STB")[1] stating that it planned to acquire the line for the purpose of providing commuter rail operations, but that it would not acquire the right or obligation to conduct freight rail service of any kind over the line. Relying on that statement, the STB concluded that it had no jurisdiction over the transfers because "Board authorization is not required...when the common carrier rights and obligations that attach to the lines will not be transferred" and, therefore, the State "would not become a rail carrier subject to the Board's jurisdiction as a result of the transaction." STB Finance Docket No.

---

[1] The STB, which is the successor to the Interstate Commerce Commission, has responsibility for enforcing Congress' railroad policies and has authority over sales of rail lines.

34793 at 2-3, attached as Appendix A to *Opposition of Plaintiff to Motion by Defendant BNSF to Dismiss Complaint for Lack of Jurisdiction* [Doc. 25].

Plaintiff, Brotherhood of Maintenance of Way Employes Division[2] ("BMWED"), argues that as the only provider of freight service on the rail lines, BNSF has a nondelegable obligation under the Interstate Commerce Act ("ICA") to maintain the tracks over which it is required to provide rail freight transportation.  Since BNSF retains that nondelegable obligation, alleges Plaintiff, BNSF may not contract with the State to have the State maintain the rail lines, because both the Railway Labor Act ("RLA") and the collective bargaining agreement between BNSF and the Plaintiff require that BMWED-represented employees perform the maintenance work.  Plaintiff also alleges that its collective bargaining agreement with BNSF requires BNSF to use employees represented by BMWED to perform work that has customarily and historically been performed by Maintenance of Way employees and that this work includes maintenance of way work on the rail lines being transferred to the State.  Thus, Plaintiff argues, BNSF may not contract with the State through their JUA to have NMDOT maintain those lines.

Plaintiff sought a declaratory judgment on two issues.   First, that BNSF, as the sole entity with the right and obligation under the ICA to provide common carrier rail freight operations over the subject rail lines, has a nondelegable obligation under the ICA to maintain its right of way.  Second, that BNSF has violated the RLA by contracting with the State to perform the maintenance of way work.  It also sought an order enjoining BNSF and Secretary Faught, and all persons acting in concert with them, from consummating any further line transfers until

---

[2] The parties and the Court have, throughout this case, utilized two different spellings of BMWED's full name, occasionally using "Employees" rather than "Employes."  BMWED's web site, located at http://www.bmwed.org,confirms that "Employes" is the correct spelling of the name.

3

either BNSF obtains relief under the RLA from its alleged obligation to have Union employees perform the maintenance work, or the State and BNSF "reform" their agreement such that BNSF honors its alleged obligations to the BMWED employees.  In addition, Plaintiff sought a permanent injunction requiring the State and BNSF to reform their JUA so that it is consistent with the collective bargaining agreement between BNSF and Plaintiff.

On May 19, 2006, Defendant Faught filed a motion to dismiss based on Eleventh Amendment sovereign immunity [Doc. 8] and a second motion to dismiss based on lack of subject matter jurisdiction and failure to state a claim [Doc. 10].  That same day, Defendant BNSF filed a motion to dismiss for lack of subject matter jurisdiction [Doc. 12].  On September 11, 2007, the Court held a hearing on these motions at which it concluded that all three motions should be granted.  The Court's reasoning was explained in its oral ruling at the hearing, and reflected in its *Order of Dismissal*, filed September 13, 2007 [Doc. 82].

In addition to Plaintiff's *Motion to Alter or Amend the Judgment*, Plaintiff also filed two unopposed motions for leave to file supplemental declarations [Doc. 84, filed October 12, 2007, and Doc. 96, filed January 31, 2008].[3]  Plaintiff also filed a *Notice of Supplemental Authority* [Doc. 102, filed July 23, 2008], which it contended presented relevant cases decided after the Court's initial decision.  On August 5, 2008, the Court held a hearing on Plaintiff's *Motion to Alter or Amend the Judgment*, during which it heard arguments from Plaintiff and Defendant

---

[3] Although Defendant BNSF did not object to Plaintiff's first *Motion for Leave to File Supplemental Declarations* [Doc. 84], it did dispute the arguments contained in Plaintiff's motion and Plaintiff's characterization of what the supplemental declarations showed.  *See Defendant's Response to Plaintiff's Motion for Leave to File Supplemental Declarations* [Doc. 89].  Similarly, Defendants had no objection to Plaintiff's motion to file a second group of supplemental declarations, but Defendant BNSF did note its objection to Plaintiff's characterization of what the supplemental declarations showed.

BNSF. The arguments on Plaintiff's motion included issues raised by Plaintiff's supplemental filings. The Court did not revisit its decision dismissing Secretary Faught at the hearing.

## DISCUSSION

1) <u>Adding BRS as a Plaintiff</u>

In granting the Defendants' motions to dismiss the complaint, the Court denied all remaining pending motions as moot. *See Order of Dismissal*, Doc. 82 at 3. One of the remaining motions still pending at that time was Plaintiff's *Motion to Amend Complaint* [Doc. 64, filed November 15, 2006]. Through that motion, Plaintiff sought to add the Brotherhood of Railway Signalmen ("BRS") as a plaintiff to all but Count IV of the complaint. In its *Motion to Alter or Amend the Judgment*, Plaintiff asks the Court to vacate its denial of the motion to add BRS as a plaintiff. Plaintiff argues that, despite the Court's dismissal of the complaint, the motion to amend is not moot because BRS's status as a party entitled to appeal is still relevant.

Neither Defendant opposes the addition of BRS as a plaintiff, and the Court agrees with Plaintiff that the necessity of clarifying BRS's status as a plaintiff for appeals purposes prevents Plaintiff's *Motion to Amend Complaint* from being moot, even if the Court maintains its dismissal of the complaint. Accordingly, Plaintiff's *Motion to Amend Complaint* is hereby GRANTED.

2) <u>Dismissal of the Complaint Against Secretary Faught</u>

In its *Order of Dismissal*, the Court held that Plaintiff's complaint failed to state a claim against Secretary Faught because Plaintiff failed to allege that she had violated any legal duty to Plaintiff. In fact, Plaintiff admitted as much during the hearing on the motions to dismiss. Plaintiff's argument essentially stated that Defendant Faught might violate the Railway Labor Act if, at some point in the future, the Joint Use Agreement between BNSF and the State of New

Mexico were ordered to be reformed and the Secretary refused to comply with this order. The Court found this assertion of a future possible violation of federal law to be speculative and premature, and to fail to state a claim upon which relief could be granted.

The Court further held that Secretary Faught, as a state officer, has sovereign immunity against Plaintiff's claims. The Court disagreed with Plaintiff's argument that the exception to Eleventh Amendment immunity outlined in *Ex Parte Young*, 209 U.S. 123 (1908) applies in this case. Plaintiff conceded that Secretary Faught had not violated the constitution or federal law, but instead based its claims against her on the allegation that she might violate the Railway Labor Act at some point in the future.

Three grounds warrant granting a motion under Fed. R. Civ. P. 59(e): 1) an intervening change in controlling law; 2) new evidence previously unavailable; or 3) the need to prevent clear error or manifest injustice. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). With respect to the issue of the Court's dismissal of Secretary Faught from this case, Plaintiff has not attempted to rely on either of the first two grounds, instead alleging that the Court "misapprehended...the controlling law." Doc. 93 at 3 (quoting *Servants of the Paraclete*, 204 F.3d at 1012).

The Court carefully considered both the extensive briefing on this issue and the parties' oral arguments prior to issuing its previous ruling. Plaintiff's current motion does not set out any law or fact not previously considered by the Court, but instead simply attempts to reargue a position that the Court has already rejected. Plaintiff's motion on this issue is therefore denied.

      3)    <u>Dismissal for Lack of Subject Matter Jurisdiction</u>

The primary purpose behind the RLA is "to promote stability in labor-management

relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). In order to accomplish this purpose, the RLA establishes a mandatory arbitration system for settling two classes of labor disputes: those concerning "rates of pay, rules, or working conditions," which are deemed "major" disputes; and those "growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions," which are deemed "minor" disputes. 45 U.S.C. § 151a. Thus, major disputes relate to "'the formation of collective [bargaining] agreements or efforts to secure them.'" *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 302 (1989)("Conrail")(quoting *Elgin, J. & E. Ry. v. Burley*, 325 U.S. 711, 723 (1945)). Minor disputes, on the other hand, involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." *Brotherhood of R.R. Trainmen v. Chicago River & Indiana R.R. Co.*, 353 U.S. 30, 33 (1957). Simply put, "major disputes seek to create contractual rights, minor disputes to enforce them." *Conrail*, 491 U.S. at 302.

The statutory framework constructed to resolve disputes differs substantially depending on whether the dispute is classified as major or minor. In the case of a major dispute, the parties are required to "maintain the status quo" until they complete a "lengthy process of bargaining and mediation." *Id*. District courts have subject matter jurisdiction to enter an injunction to preserve the status quo pending completion of the required dispute resolution procedures without the customary showing of irreparable harm. *Id*. at 303. If the bargaining and mediation process fails, and the major dispute remains unsettled, the parties may resort to using economic force. *Id.* In contrast, a district court lacks subject matter jurisdiction over minor disputes, which are instead subject to the exclusive jurisdiction of the National Railroad Adjustment Board or an

alternative adjustment board established by the parties which then conducts compulsory and binding arbitration. *Id*. at 303-304.

Thus, in a situation involving a disagreement between a railroad and union, the court must make a threshold determination of whether the nature of the dispute is major or minor in order to determine whether it has jurisdiction to adjudicate the underlying merits of the claim. In *Conrail*, the Supreme Court outlined the proper method to evaluate the issue, holding that the dispute is minor if the contested action "is arguably justified by the terms of the parties' collective bargaining agreement." *Id*. at 307. In contrast, the dispute should be classified as major only if "the employer's claims are frivolous or obviously insubstantial." *Id*. The *Conrail* Court classified the burden that carriers bear in establishing exclusive arbitral jurisdiction under the RLA as "relatively light," *Id.*, and the Tenth Circuit characterized the test as being "slanted toward finding a dispute minor." *Brotherhood of Maintenance of Way Employes v. Union Pac. R.R. Co.*, No. 00-1105, 2000 U.S. App. LEXIS 33454 at *3 (10th Cir. Dec. 21, 2000). Indeed, a court could deem a carrier's contract interpretation to be questionable, improbable, or even likely to be proven incorrect,[4] and still find that the dispute is minor as long as the employer's contractual justification for its action is plausible. *See Sheet Metal Worker's Int'l Ass'n v. Burlington N. R.R. Co.*, 893 F.2d 199, 205 (8th Cir. 1990); *Nat'l Ry. Labor Conf. v. Int'l Ass'n of Machinists & Aerospace Workers*, 830 F.2d 741, 748 (7th Cir. 1987).

With this standard in mind, at the September 11, 2007 hearing on the Defendants' motions to dismiss, the Court held that it lacked subject matter jurisdiction over Plaintiff's action because this constitutes a minor dispute. It found that Defendant BNSF's actions in selling

---

[4] By citing this standard, the Court does not mean to imply that it deems Defendant's interpretation to be questionable or improbable.

portions of its track to the State of New Mexico and transferring the maintenance of the track to the State were arguably justified under the terms of the CBA.  The Court noted that numerous arbitration awards stand for the principle that when a carrier no longer owns the property to be maintained, maintenance and improvement work is not within the scope of rules governing the relationship between the union and the carrier, and it referenced arbitration awards in favor of carriers who delegated maintenance and repair work to lessees or other third parties.  It also noted past practice in which BNSF sold a fee interest in property, retained operating rights over that land, and delegated maintenance responsibility to the purchaser.  It noted that Plaintiff itself filed this action under Section 3 of the RLA, which is the procedure for resolving minor disputes. Finally, the Court noted that nothing in the CBA prevents BNSF from selling its lines or abolishing maintenance of way positions.

Following the Court's dismissal of Plaintiff's complaint, Plaintiff filed two unopposed motions for leave to file supplemental declarations in addition to its motion to alter or amend the judgment.  Plaintiff argued that the supplemental declarations demonstrated that an RLA adjustment board would not have sufficient jurisdiction to consider all of the elements necessary to resolve Plaintiff's complaint, and that Defendant BNSF knew that a board would lack such jurisdiction at the time it argued to the Court that an RLA board had exclusive jurisdiction.

From the inception of the case, Plaintiff has argued that the dispute between it and BNSF does not concern the proper interpretation of the CBA, but rather whether BNSF retained the obligation to perform maintenance even after its sale of track to the State of New Mexico, in which case BNSF could not delegate the work to anyone other than Plaintiff to perform. Plaintiff contends that this question cannot be resolved without interpreting the Interstate Commerce Act ("ICA"), the decision of the STB dismissing the Notice of Exemption that the

9

State of New Mexico Department of Transportation had filed, and the sale documents.

The supplemental declarations filed by Plaintiff authenticated letters sent by BNSF to Plaintiff BMWED and proposed Plaintiff BRS. The supplemental declarations attached the referenced letters, which were received by counsel for BMWED and BRS after Plaintiff filed its motion to alter or amend the judgment. The letters set forth BNSF's position that Plaintiff's contention that BNSF retained the obligation under the ICA to maintain the right-of-way it reserved for itself after the sale to the State is outside of the jurisdiction of an RLA adjustment board. For example, in a September 27, 2007 letter to proposed Plaintiff BRS, BNSF's General Director of Labor Relations stated:

> [BRS's] claims are based on an argument of law, rather than of labor contract. You are arguing that [BNSF] may not, as a matter of law, divide its "common carrier obligations" from its sale to the State of New Mexico. All these labor claims are really based on notions that require interpretation of the Interstate Commerce Act (particularly 45 U.S.C. § 11101), Surface Transportation Board (STB) jurisdiction and powers, or both. Those are clearly functions outside of the jurisdiction of any board of adjustment, and BNSF does **not** consent to confer any such jurisdiction.

Doc. 84, Kidder Ex. 1 at 1-2 (emphasis in original).

One of the hallmarks of a minor dispute is that it "may be conclusively resolved by interpreting the existing agreement." *Conrail*, 491 U.S. at 305. In submitting its supplemental declarations and attached letters, Plaintiff argued that BNSF's position confirmed that this is not a minor dispute because it cannot be conclusively resolved by a board of adjustment, since the adjustment board does not have jurisdiction to interpret the ICA as it must do to determine whether BNSF retained the obligation to maintain the right-of-way it reserved to itself. Plaintiff contends that BNSF took inconsistent positions, initially arguing that Plaintiff has no remedy in federal court because this is a minor dispute, but then arguing after the Court granted the motion

to dismiss that there is no remedy in front of an RLA arbitrator either.  Plaintiff alleges that BNSF's letters demonstrate that it is merely playing a "shell game" with the Court, and that BNSF intends to capitalize on the limited jurisdiction of RLA adjustment boards to prevent Plaintiff's claim from being properly heard in any forum.  Doc. 94 at 3.

Throughout this litigation, Defendant BNSF has maintained that Plaintiff's claim is properly seen as alleging a violation of subcontracting or scope rules (defining which work a union owns), as defined by the CBA.  It has argued that, in order to prevail, Plaintiff must demonstrate that the terms of the sale between BNSF and the State resulted in BNSF retaining control of the maintenance requirement, and that turning over maintenance to the State therefore violated the CBA.  At no point had BNSF suggested that interpretation of the ICA or STB authority was necessary to resolve this dispute.  However, because BNSF's letters refusing to expand the adjustment board's jurisdiction to consider non-labor legal issues appeared to be the first instance of BNSF explicitly discussing its view of the scope of the adjustment board's jurisdiction, the Court held a hearing to ensure that BNSF was not altering its position in an attempt to take unfair advantage of the Court's earlier ruling.

The arguments of the parties at the hearing and its review of all of the parties' earlier submissions convince the Court that BNSF did not change its position after the Court's earlier ruling because BNSF had never stated nor implied that it would expand the scope of the adjustment board's jurisdiction.  Therefore, the Court has no need to alter its earlier determination that this is a minor dispute properly in the exclusive jurisdiction of an RLA board of adjustment or that the RLA board of adjustment can conclusively resolve this dispute.

Plaintiff alleges that its members have the contractual right to perform the maintenance work at issue.  BNSF contends that Plaintiff's members have no right to perform work on track

sold to a third party, and has plausible contractual justifications for its actions.  This is the very essence of a minor dispute over which this Court has no jurisdiction.  If a board of adjustment arbitrator examines the terms of the sale between BNSF and the State and finds that BNSF retained enough control over the right-of-way such that maintenance by the State would constitute illegal subcontracting, it can order BNSF to pay Plaintiff's claims until such time as Plaintiff is no longer being harmed by BNSF's contract violation.  This would completely resolve Plaintiff's RLA claim.  Plaintiff's motion on this issue is therefore denied.

        4)        <u>Plaintiff's Alternative Motion for Preliminary Injunction</u>

Plaintiff contends that the Court erred when it dismissed this case for lack of subject matter jurisdiction without addressing the alternative claim in its complaint.  Plaintiff's alternative claim sought, in the event the Court characterized this as a minor dispute, an injunction enjoining any further rail line sales until an adjustment board resolved the contract claims.  Complaint, Doc. 1 at ¶39.  The alternative claim also asked the Court to retain jurisdiction over the case so that, if the adjustment board ruled in Plaintiff's favor, the Court could require BNSF and the State to reform the Joint Use Agreement and restore maintenance work to BMWED-represented employees.  *Id*.

Perhaps the Court could have been more clear when dismissing the case that its characterization of the dispute as minor also precluded the injunctive relief sought by Plaintiff, but the fact remains that the injunctive relief Plaintiff seeks, prior to a decision by the adjustment board, is inappropriate.

Several Circuits have stated flatly that injunctive relief is inappropriate in a minor case because the statutorily established grievance procedures are mandatory and exclusive.  *See, e.g., Int'l Ass'n of Machinists & Aerospace Workers v. Eastern Air Lines, Inc.*, 826 F.2d 1141, 1151

(1st Cir. 1987)(holding that district court committed reversible error in issuing injunctive relief to maintain status quo in a minor dispute pending resolution of the merits by an arbitration board and listing holdings from other circuits in accord). The Tenth Circuit has not ruled on the ability of courts to issue the type of injunctive relief Plaintiff seeks. The case Plaintiff cites, *BMWED v. Union Pac. R.R. Co.*, 460 F.3d. 1277 (10th Cir. 2006) offers no help. The *Union Pacific* case held that a district court had jurisdiction to enjoin BMWED from striking during the resolution of the parties' minor dispute, and to place conditions on the granting of that injunctive relief, but not to condition the anti-strike injunction on the parties' minor dispute being remanded to a particular adjustment board. That the district court had jurisdiction to enjoin a strike arising out of a minor dispute flows directly from *Conrail*, 491 U.S. at 304. Although *Conrail* explicitly found that district courts may enjoin suits arising out of minor disputes, it declined to resolve the question of whether a federal court had the authority to issue a status quo injunction during the pendency of a minor dispute at a union's behest, where an employer had not sought a strike injunction. *Id.*, n.5. Thus, the court's holding in *Union Pacific* does not extend beyond the context of an anti-strike injunction, which is not present in this case.

Even those courts that have recognized the ability to issue an injunction in a minor dispute prior to an arbitrator's decision have done so only in very limited circumstances. The Second Circuit, while acknowledging a conflict with numerous other circuits, has stated that issuing an injunction to preserve the status quo pending resolution of a minor dispute "is appropriate...in those instances when it appears that its absence would prevent the Adjustment Board from giving a significant remedy to the side that prevails before the Board." *CSX Transp., Inc. v. United Transp. Union*, 879 F.2d 990, 1004 n.10 (2d Cir. 1989)(citation omitted). Similarly, the Third Circuit noted that "[t]here are limited circumstances in which a court may

issue an injunction in minor disputes to preserve the status quo, when such action is necessary to keep pending arbitration proceedings from becoming meaningless." *Gen. Comm. of Adjustment, United Transp. Union v. CSX R.R. Corp.*, 983 F.2d 584, 593 n.11 (3d Cir. 1990).[5]

Although the Court does not consider that the narrow exception discussed by the Second and Third Circuits above is the law in the Tenth Circuit, even if it were, Plaintiff has not met the exception. Plaintiff has not demonstrated that its remedy if it prevails in front of the Board will be meaningless without an injunction. An arbitrator could order BNSF to pay Plaintiff's damage claims if it found that BNSF's actions constituted subcontracting in violation of the CBA. In the event that Plaintiff is dissatisfied with the Board's remedy, it may, at that time, file a petition for review with a district court pursuant to 45 U.S.C. § 153, First (q). In the event that Plaintiff prevails before the Board and BNSF refuses to follow the Board's ruling, Plaintiff's remedy is to file suit to enforce the ruling at that time pursuant to 45 U.S.C. § 153, First (p). An injunction in this minor dispute to maintain the status quo or to maintain jurisdiction to enforce a hypothetical award is inappropriate, and Plaintiff's alternative claim is therefore denied.

## CONCLUSION

**IT IS THEREFORE ORDERED** that, with respect to Plaintiff's *Motion to Alter or Amend the Judgment* [Doc. no. 83] is granted in part and denied in part, in that Plaintiff's *Motion to Amend Complaint* [Doc. No 64] to add the Brotherhood of Railway Signalmen as a plaintiff is

---

[5] The body of the Third Circuit's opinion makes clear just how narrow this exception is, when it says "we see no merit in the Union's argument that the Supreme Court's opinion in *Conrail* gives the district court authority it should exercise to maintain jurisdiction in a minor dispute by staying its proceedings pending arbitration by the Board. The Court in *Conrail* adhered to the established major/minor categorization scheme and did not suggest that district courts should retain jurisdiction over disputes referred to the Board for arbitration." 983 F.2d at 593.

GRANTED; all other relief sought in Plaintiff's *Motion to Alter or Amend the Judgment* [Doc. no. 83] is DENIED.

                                                                                 _____
                                                                                 JUDITH C. HERRERA
                                                                                 UNITED STATES DISTRICT JUDGE